CASE 75.—ACTION FOR SETTLEMENT OF ACCOUNTS AND INVOLVING TITLE OF INFANT CHILDREN TO HOMESTEAD.—MAY 23.

# Schnabel & Others v. Schnabel's Ex'rx.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT DENYING RIGHT OF INFANT CHILDREN OF JACOB SCHNABEL TO A HOMESTEAD, AND THEY APPEAL. REVERSED.

HOMESTEAD—DEVISE SUBJECT TO PAYMENT OF DEBTS—RIGHTS OF WIDOW AND INFANT CHILDREN.

Held: 1. Where the widow fails to renounce the provisions of the husband's will devising to her his entire estate subject to the payment of his debts, she can not claim the homestead as against his creditors; but, as the rights of the infant children can not be thus defeated, they are entitled to occupy the entire homestead jointly with the widow until they become of age.

2. The homestead having been sold, the infant children are entitled to the interest on $1,000; but the chancellor may, in his discretion, allow them the present cash value of their interest, or direct a reinvestment of the fund in a homestead for their use for the statutory period.

GUFFY, J., dissents from the proposition that the testator may charge his homestead with the payment of debts, so as to defeat the rights of the widow.

C. B. SEYMOUR, FREDERICK FORCHT, JR., AND PHELPS & THUM FOR APPELLANTS.

STROTHER & GORDON FOR APPELLEES.

(No briefs in record.)

OPINION OF MAJORITY OF THE COURT BY JUDGE DURELLE—REVERSING.

The facts of this case, together with a discussion of most of the authorities, will be found stated in the separate opinion of Judge Guffy. However much the majority of the court might be inclined to agree in the reasoning of that opinion, were the question now for the

first time presented for decision, the effect of that doc-
trine would be so far-reaching, and would so tend to un-
settle property rights vested in accordance with the doc-
trine laid down in previous decisions of this court, that
we are constrained to base our judgment upon a different,
if less satisfactory, argument. In this case the will of
the testator provided for the payment of his debts, and
devised all his estate to his wife, who failed to renounce
the will; and the question now is whether the wife or the
children, or both, are entitled to a homestead.    In an
opinion by Judge Hazelrigg in Nichols v. Lancaster (Ky.)
32 S. W. 676, a somewhat similar question was under dis-
cussion.   The court said that:   "If the widow take under
such a will, it is held that she must abide by its terms.
In a number of cases it has been held that the owner
may sell his homestead and pass the fee, and in Myers'
Guardian v. Myers' Adm'r, 89 Ky. 442, [12 S. W. 933,]
it was held that the owner of a homestead not exceeding
$1,000 in value might pass title thereto to his widow
and children by will, and his creditors could not complain.
So, in Pendergest v. Heekin, 94 Ky. 384, [22 S. W. 605,]
it was held that a debtor may by will, as well as by deed,
invest his wife or child with title to his homestead, free
from the claim of his creditors."   This is followed by the
significant language:   "No devisee who would not be en-
titled under the statute to a homestead has been held en-
titled under a will, but the taker is said to hold, not under
the statute, but under the will.   Whether this conclusion
is entirely logical, and in consonance with the statute
which gives the widow and infant children only the use
of the property for a given time, it is too late now to in-
quire."   The authorities cited in Nichols v. Lancaster, and
in the separate opinion of Judge Guffy in this case, abund-

antly show the recognized doctrine to be that the testator may by will vest his widow with a fee-simple title in property occupied by him as a homestead, so as to defeat the claims of creditors, and, further, that if the will contains a provision for the payment of debts, and the widow fails to renounce its provisions, she takes the homestead property with that burden upon it; for, as said by Judge Guffy in a very recent case in which that question was presented (Harrison v. Taylor's Adm'r [Ky.] 51 S. W. 193): "It is well settled that a person can not claim under a will, and also against it; and, inasmuch as appellant accepted the provisions of the will of her husband, she takes the entire property subject to his debts, and can not claim either homestead or dower against his credi. tors." Under the doctrine thus explicitly declared, there have doubtless been very many transfers by widows of fee-simple title in homesteads devised to them by will. The doctrine of *stare decisis* should apply, to prevent this court announcing principles at variance with this doctrine, to unsettle and disturb the property rights acquired under such transactions. We are of opinion, therefore, that, by her failure to renounce the provisions of her husband's will, Mrs. Schnabel is estopped to claim her right of homestead against the creditors. .

The claim of the children, however, presents a different question. Being infants, they could not renounce the provisions of the will, and are not estopped by their failure to do so. Their mother's acceptance of the will's provisions operated to give her a fee simple, but subject to the children's right of joint occupancy with her, under the statute, until they should become of age. Under the terms of this will, the widow's interest was subject to the payment of her husband's debts, but that can not affect

the children's right to a joint enjoyment of the entire homestead for the entire period allowed by the statute. It follows, therefore, that they are entitled to the use of the homestead until they arrive at the age of twenty-one, respectively; and, as the property has been sold, they are entitled to the interest upon $1,000, the payment of which will be provided for by the chancellor, by proper order, upon return of the case. The chancellor may, in his discretion, as he may deem for the best interests of the children, allow them the present cash value of their interest, or may direct a reinvestment of the fund in a homestead for their use for the statutory period. For the reasons given, the judgment is reversed, upon the appeal of the children, and the cause remanded, with directions to enter a judgment in conformity with this opinion.

Separate opinion of Judge Guffy concurring in the reversal.

Jacob Schnabel died in February, 1894, having first made and published his last will and testament. Item 1 reads as follows: "I desire all of my just debts and funeral expenses paid." The second item is as follows: "I will and bequeath to my beloved wife, Frances Schnabel, all of my property, real, personal, and mixed, to do with as she pleases." The said Frances was also made sole executrix of the will, and it was requested that she be allowed to qualify without giving surety. This will was probated on September 18, 1895. The widow did not renounce the provisions of the will, but qualified as executrix, and on the 21st of May, 1896, instituted suit in the Jefferson Circuit Court for a settlement of her accounts as executrix. It seems that the property consisted almost entirely of real

estate, which was indivisible without great detriment to its value, and a sale of the entire property was made; it being necessary to sell the real estate to pay the debts of the testator. It finally became manifest that the entire proceeds of the sale would be insufficient to pay the indebtedness of the testator. The testator left three unmarried infant children, ranging from the ages of five to nine years. During the progress of the suit aforesaid, the appellants Frank, Theodore, and Jacob Schnabel, by their guardian, and also Frances Schnabel, the widow, filed their answer and counterclaim, which, together with an amended petition theretofore filed, showed that the testator at the time of his death was a *bona fide* housekeeper, with a family consisting of these appellants, and occupying and using the real estate in question as a homestead; and in the amended petition, answer, and counterclaim these appellants asserted a claim for homestead, and sought to have set apart to them $1,000 of the purchase price of said real estate. The court sustained the demurrer upon the part of the creditors to the pleadings aforesaid, and from that judgment this appeal is prosecuted.

It is the contention of appellee that inasmuch as the will of Jacob Schnabel provided for the payment of all his debts, and bequeathed to his wife all his property, as before stated, and she failed to renounce the provisions of the will, she and the other appellants are, for the reasons aforesaid, deprived of any homestead claim or right. Appellee cites the following cases in support of his contention, to-wit: Pribble v. Hall, 13 Bush, 61; Brame v. Craig, 12 Bush, 404; Derr v. Wilson, 84 Ky., 14; Watson v. Christian, 12 Bush, 524; Elmore v. Elmore's Adm'r, 5 Ky Law Rep., 580; Hazelett v. Farthing, 94 Ky., 421, (22 S. W., 646.) In Watson v. Christian the testator devised to his

wife, for life, his entire estate, subject to the payment of his debts. She did not renounce the provision of the will, and it was held that she could not claim a homestead in opposition to the claims of the creditors of her husband. It does not appear that there were any infant children of the testator. In fact, it is pretty evident that there were none. Nor was the power of the testator to dispose of his property. by will considered or questioned in that case. It is worthy of note that Judge Pryor dissented from the opinion. In Pribble v. Hall it was decided that the homestead law merely exempted the homestead from the sale under coercive process, and left the husband's power of alienation unchanged. And in Brame v. Craig, 12 Bush, 404, the same doctrine is announced. It is also said in this case that: "The homestead exemption is not an estate in the land, but only a privilege of occupying the same by a housekeeper with a family, as against his creditors; and, although the homestead is not subject to coercive sale by a creditor, a sale and conveyance of a tract of land covered by the homestead privilege, by the owner thereof, is not prohibited by the statute." In Derr v. Wilson the question involved in that case was the validity of a judgment limiting the right of a party to an estate for life, and vesting his infant son with an interest for two years, on the contingency that he survived his father. This court said that judgment was erroneous, but, as it stood unreversed, it was conclusive as to the rights of the parties in that case. It is true that the court, in discussing the question, said: "The owner of the land, who is in possession, and a housekeeper, with a family, is entitled, as against creditors, to an exemption of so much of the land, including the dwelling house upon it, as shall not exceed in value $1,000. This belongs to him, with a right to dispose of it

as he sees proper, because the creditors have no interest iu it. . . ." The court further said: "It is only where the owner of a homestead dies without disposing of it that it passes to his widow and children, and then it may be sold subject to their joint occupancy; that is, to be held by the widow so long as she occupies it for her benefit and the in-fant children, and if she dies or abandons it, the unmarried infant children can occupy it until the youngest unmarried child becomes twenty-one years of age." In Elmore v. El-more's Adm'r, it seems that the court assumed that the court in Watson v. Christian decided that by the widow's failure to renounce the provisions of the will which made her a devisee, but provided that the testator's debts should be paid, thereby she not only forfeited her right to a home-stead, but that her action barred the right of the infant children to claim a homestead. But the fact is that the right of the children to a homestead was not involved in the case of Watson v. Christian, nor was it discussed. The opinion in Elmore v. Elmore's Adm'r fails to state what really was the issue, or what the contention of the different parties was; nor does it show what the judgment of the court below was that was affirmed. It will be further seen that the syllabus which the reporter, we suppose, placed at the head of the case *supra* can not be found in Watson v. Christian. In Hazelett v. Farthing, 94 Ky., 421, (22 S. W., 646), it seems that the court expressed an opinion to some extent sustaining the contention of ap-pellee, but it will be found upon an examination of that opinion that the question involved in the case at bar was not in any sense before the court for decision. The ques-tion involved was as to the right of one of George Farth-ing's children, not named as a devisee, to a share in the estate devised to a brother who had died. The will in

question devised to the wife of the testator and children, Susan, Francis, Charles W., N. J., C. B., and J. C. Farthing, and H. M. Pulliam, all the balance of his personal property, real estate, etc. The court held that the devisees took a joint and equal interest in the land question, for the appellant Hazelett, who was one of his children, was excluded from any interest, while Pulliam, not his child, was included. The relief sought was a sale of the land and a division of the proceeds, a portion of which plaintiff claimed in right of her full brother, one of the persons named in the fourth clause, but since deceased. It also seems that the plaintiff had alleged in her petition that the widow, who is her stepmother, accepted the provisions of her husband's will, and, with the infant children, occupied the land under it for twelve years past. The court sustained the claim of the plaintiff as one of the heirs of her father, but it will be seen that the question of a creditor's right to subject the homestead was not involved or discussed by the court. Nor was the power of the testator under the statute to dispose of the homestead by will considered.

The appellants cites Kentucky Statutes, sections 1706, 1707, 4825; Myers' Guardian v. Myers' Adm'r, 89 Ky., 442, (12 S. W., 933); Pendergast v. Heekin (Ky.), 22 S. W., 605.

Section 4825, Kentucky Statutes, provides: "Every person of sound mind not being under twenty-one years of age, nor a married woman, may by will dispose of any estate, right or interest in real or personal estate that he may be entitled to at his death, which would otherwise descend to his heirs or pass to his personal representatives; although he may become so entitled after the execution of his will." Section 1702, Id., provides that, in addition to the personal property exempt from execution, there shall be exempt from sale under execution, attachment, or judg-

ment, except to foreclose a mortgage or for purchase money, so much land, including a dwelling house and appurtenances, owned by debtors who are actual, *bona fide* housekeepers, with a family, resident in the Commonwealth, as shall not exceed $1,000. Section 1706, Id., provides that: "No mortgage, release, or waiver of exemption shall be valid unless same be in writing, subscribed by the defendant and his wife and acknowledged and recorded in the same manner as conveyance of real estate; and such an exemption in favor of an execution debtor or one against whom judgment has been rendered, shall continue after his death for the benefit of his widow and children, but shall be estimated in allotting dower." Section 1707 is as follows: "The homestead shall be for the use of the widow so long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age. But the termination of the widow's occupancy shall not affect the right of the children; but said land may be sold, subject to the right of said widow and children, if a sale is necessary to pay the debts of the husband." It is the contention of the appellants that by the express terms of the statute the widow and infant children are vested with a homestead right upon the death of the husband and father, and that the homestead does not descend to the heirs of the husband or to his personal representatives, and therefore is not a subject which can be devised or disposed of by will. It must be conceded that a homestead does not descend generally to the heirs of the decedent; for, as said in Brame v. Craig, 12 Bush, 407, the homestead exemption is not an estate in land, but only a privilege of occupying the same. And it is clear that the right of occupancy must depend upon the fact that there

is a widow or infant child or children who survive the testator, and such right is given them by statute, and not simply because they are the heirs of the decedent. It has always been considered that statutory exemptions from co- ercive sales were, in part, if not chiefly, intended for the benefit of the wife and children of the debtor. But, if a testator can dispose of the homestead by will, he can thus defeat the statutory homestead right given to his wid- ow and infant children by express provision of law; and, moreover, if appellee's contention be true, the testator might have disposed absolutely of the homestead, and thus defeated the statutory right of the creditor to sell the same, subject to the right of widow and children, in satis- faction of the debts due from the testator. It is sug- gested by the appellants that this view of the law is not at all in conflict with the right of the testator in his life- time to sell the land used as a homestead, which, of course, carries with it the homestead right. Such a sale would not defeat the potential right of dower unless the wife united in the conveyance. It will be seen from the statute that a homestead can not be legally sold under execution or other coercive process for debt, unless the wife consents thereto, as provided in the statute. A will only takes ef- fect after the death of the testator, and it is suggested that upon the death of the testator his homestead *eo instanti* passes from him and is vested in his widow and infant children, and that his will could in no manner affect the same. And it is further suggested that, inasmuch as he had not disposed of his title to the property in question during life, he could not place the same beyond the reach of creditors by a last will and testament, because the stat- ute makes a different provision. It should be remembered

that prior to the homestead act of 1866, all the real estate
of the debtor was subject to coercive sale, and it therefore
follows that he, or those claiming under him, can only as-
sert such exemptions as are allowed by the homestead act
aforesaid.   The owner of the land in and to which the
homestead attaches may sell the land in the same manner
that he may sell other real estate, and, the land being
sold, the homestead right goes with it.   He may even give
the homestead tract away, and no creditor can complain,
because the creditor can not levy and sell such land to sat-
isfy his demand.   But the homestead statute expressly
provides that the homestead tract may, after the death of
the owner, subject to the rights of widow and infant chil-
dren, be sold to pay the debts of decedent.   Can the home-
steader defeat or nulify the provisions of the statute by
will?   It is certain that he could not by will place any other
property beyond the reach of his creditors.

The case of Myers' Guardian v. Myers' Adm'r, 89 Ky.,
443, (12 S. W., 933), discusses the question of homestead.
It appears from the opinion that Michael Myers devised to
his wife, for life, and the remainder to his daughter, Hat-
tie Myers, all his estate, consisting of a small amount of
personalty, since consumed, and the house and lot in
controversy.   In 1888 the widow died, and Power was ap-
pointed her administrator, and instituted his action for a
sale of the house and lot for the payment of debts, etc.
Hattie, who was an infant, filed her answer by guardian,
and alleged, that at the time of her father's death he was a
*bona fide* housekeeper, and that the lot in question was of
less value than $1,000, and in virtue of the will, her mother
being dead, she was absolute owner thereof, and asked judg-
ment to that effect, and in the second paragraph asked that,
in case the court adjudged the property subject to payment

of debts against the testator, her homestead right to the proceeds be saved and set apart to her.  The court below sustained a general demurrer to the answer, and the lot was sold, bringing $505.  This court, after quoting the homestead statutes, said: "By a fair construction of that section, the widow and children can not be disturbed in possession of the homestead while the widow lives; nor, in case of her death or abandonment, can the children be deprived of the possession and enjoyment of it before they arrive at full age."  It seems, also to be clearly decided that in case of a sale of the homestead by the widow, or in case of her death or abandonment, the children are entitled to the use of the homestead.  The court further said: "For not only is it in terms provided that the termination of the widow's occupancy shall not affect the right of the children, but this court, in the cases of Eustache v Rodaquest, 11 Bush, 46, and Little's Guardian v. Woodward, 14 Bush, 585, has decided that the children, when there is no widow, would be entitled to the exemption. Such being the condition and relative rights of the widow and children when the owner of a homestead dies intestate, we are at a loss to see how the failure of the widow to exercise an election not to take under a will of such owner could prejudice his infant children; and consequently it seems to us the case of Watson v. Christian, 12 Bush, 524, has no application, for there it was simply decided the widow, who had not elected to renounce the will of her husband, by which it was provided his debts should be first paid out of the homestead, before she was entitled to any part of the estate devised, could not claim as widow under the statute,—the right of the infant children, if there were any, not being involved at all.  But the further and hitherto undecided question is presented,

whether the owner of a homestead not exceeding one thousand dollars in value can pass title to the property to his widow and children by will." The court finally sustained the claim of Hattie, and reversed the judgment of the court below. It seems clear that the opinion in the case *supra* sustains the contention of appellants, so far as the infant children of the testator are concerned.

The statute giving testamentary power was not considered in any of the cases referred to. Nor did the court consider that provision of the homestead law which specially provides that the homestead, subject to the rights of the widow and infants, should be liable to sale to pay the debts due from the owner of the fee. After a careful consideration of all the law respecting homestead rights, I am of the opinion that the owner of the homestead can not dispose of the same by will so as to in any manner interfere with the homestead rights of the widow and infants; nor can he by will deprive the creditors of his statutory right to subject the property to the payment of his claim. Any attempt by will to dispose of the homestead is utterly void, so far as the statutory rights of the widow, infants, and creditors are concerned. And, this being true, the widow does not forfeit her homestead right by failing to renounce the provisions of such a will. It should be remembered that the homestead right is purely statutory. It has no existence independent of the statute. It is intended primarily for the benefit of the family of the debtor. No one can acquire a homestead without first acquiring a family. Such homestead is thereafter exempt from debts thereafter created, but can be made liable for debts theretofore created. It is true the owner of the fee may sell the land, and, of course, the right to occupy goes with it; but he may not deprive the wife of her potential right

Schnabel *et als.* v. Schnabel's Ex'rx.

of dower. He may abandon the homestead, and it there-by becomes subject to levy and sale for debts, but such sale does not deprive the wife of her potential dower right. So long as the owner occupies the homestead, he can not make it subject to coercive sale for debts without the affirmative action and without consent of the wife in writing; and yet, if the power to dis-pose of it by will exists, he can defeat the homestead claim, unless the wife by affirmative action prevents it. It is important to remember that dower right is essenti-ally different from homestead. Dower is the exclusive right of the wife. But the homestead is for her and the unmarried infant children. The fact that the husband may sell the homestead, or abandon the same, does not sustain the claim that he may dispose of it by will. The presumption is that, if he sells or abandons the home, he does so to better the condition of himself and family, and he is still under obligation to care for his family. Not so in the case of a will. One of the chief objects or pur-poses of the homestead law was to protect the widow and infant children from the ill effects of the mistakes and improvidence of the husband. The case at bar illus-trates the necessity for the homestead law. I presume no one will for a moment contend that the testator intended or desired to leave his widow and little children homeless and penniless. Yet such is the result of the construction of the court below. I do not think the argument that we should adhere to the decision in Myers' Guardian v. Myers' Adm'r, because it establishes a rule under which some rights have accrued, is entitled to much, if any, weight. The decision has only been in force about ten years, and I think it much better to adopt the true rule, even if some inconvenience should result, than to adhere to an erron-

eous construction for all time. I do not think an erroneous decision should be adhered to. I do not think courts should, any more than legislatures or individuals, disregard progress, improvement, and enlightenment. I concur in the reversal of the judgment of the court below, but do not assent to the other doctrine announced in the majority opinion. My opinion is that the statute of wills does not authorize the owner of a homestead to devise it. I also think that the homestead statute prohibits any testamentary disposition thereof.